# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AMTRUST INSURANCE CO. <br> OF KANSAS, INC. | § <br> § <br> § | |
| V. | § <br> § | CASE NO. 4:11-CV-672 <br> Judge Mazzant |
| STARSHIP LEAGUE CITY, L.P. and <br> U.S.A. SELF-STORAGE, INC. | § <br> § | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's Motion to Set Aside Appraisal Award (Dkt. #49). The Court, having considered the relevant pleadings, finds that the motion should be denied.

This lawsuit arises from a property insurance claim for wind damages submitted by Defendants Starship League City, L.P. ("Starship") and U.S.A. Self-Storage, Inc. ("USA") to Plaintiff Amtrust Insurance Co. of Kansas, Inc. ("Amtrust"), their insurer.

Amtrust issued property insurance Policy No. KPP 1002037 01 (the "Policy"), effective September 13, 2009, through September 13, 2010, to its two insureds, Starship and USA. The Policy insured the buildings at 1455 North Trades Day Boulevard, Canton, Van Zandt County, Texas, 75103 (the "Property"), pursuant to the terms and conditions of the Policy.

On January 28, 2010, Starship and USA notified Amtrust of an alleged loss due to wind damage to the roof of the Property occurring on or about January 20, 2010. Amtrust inspected the loss and issued a payment for the damage it believed was due to the wind event of January 20, 2010. The letter explaining the payment was sent March 10, 2010, and determined that the amount of damage due to the wind event was $19,298.86. Amtrust then applied the $2,500.00 deductible and had a check issued in the amount of $16,798.86. Starship and USA returned that payment on August 23, 2010, indicating the payment was insufficient and that they would forward a report shortly

addressing the alleged damages.

On or about March 23, 2010, John Logsdon ("Logsdon"), a representative of the owner of the Property, hired Gary Treider ("Treider") to provide services in connection with the claim for damages to the Property. Treider inspected the Property on April 12, 2010, and formed an opinion that portions of the Property had suffered wind damages due to a storm on January 20, 2010. Treider then convinced the insured to hire an engineer Matt Phelps ("Phelps") to inspect the Property. On May 6, 2010, Treider and Phelps inspected the premises on behalf of Starship and USA. Phelps concluded that the roof had been substantially damaged by a tornado that passed nearby and needed to be replaced in its entirety. Phelps issued a report dated June 1, 2010, which was not forwarded to Amtrust until September 2, 2010.

Following receipt of the September 2, 2010 letter, Amtrust issued a reservation of rights letter to Starship and USA on September 13, 2010. Amtrust thereafter requested an opportunity to reinspect the premises with an engineer. The reinspection occurred on October 12, 2011, when Darin Lasater of Acute Engineering ("Lasater") visited the site on behalf of Amtrust and inspected and photographed the building. Treider attended on behalf of the insureds.

Lasater issued a written report on November 17, 2010, finding no direct physical damage to the roof and disagreeing with Phelps as to the cause of the damage to the roof. In Lasater's opinion, the primary cause of leaks within the building was the result of excessive thermal expansion and contraction of the through fastened metal roof panels resulting in reaming of the panels around the fixed through fasteners. Lateral forces from high winds did not cause structural damage to the subject building. Lasater disagreed with Phelps that the building sustained structural and roof damage during the wind event that warranted replacement of the roof surface and numerous purlins and columns. Lasater also opined that observed web crippling kinks in the metal roof panels were

a function of top flange panel compression that is not consistent with wind damage and an exposed fastener metal roof on a building of this size was an unfortunate design choice. Amtrust forwarded Lasater's opinions to Starship and USA.

On March 3, 2011, Starship and USA demanded appraisal under the Policy. The parties appointed their appraisers, Treider for Starship and USA, and Mitch Butler for Amtrust. The appraisers agreed upon Allen Neff ("Neff") of Unified Building Science as the umpire. The matter then proceeded through the appraisal process.

On September 24, 2011, the Appraisal Award was issued: a Replacement cost of $392,909.00 with an actual cash value amount of $196,454.50. The Appraisal Award was signed by Treider and by Neff, but not by Butler.

On November 29, 2012, Amtrust filed a motion to set aside the award (Dkt. #49). On December 17, 2012, Starship and USA filed a response (Dkt. #50). On December 27, 2012, Amtrust filed a reply (Dkt. #51). On January 2, 2013, Starship and USA filed a sur-reply (Dkt. #52).

**ANALYSIS**

Amtrust asks that the Apprisal Award be set aside for the following two reasons: (1) whether the Appraisal Award should be set aside by reason of fraud, mistake, or accident; and (2) whether the Appraisal Award should be set aside by reason that it was not in conformity with the insurance policy.

Under Texas law, "'appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain [them].'" *JM Walker LLC v. Acadia Ins. Co.*, 356 F. App'x 744, 746 (5th Cir. 2009) (quoting *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.--Houston 2004, no pet.)). An appraisal award "estop[s] one party from contesting the issue of damages in a suit on the insurance

3

contract, leaving only the question of liability for the court." *Lundstrom v. United Servs. Auto. Ass'n–CIC*, 192 S.W.3d 78, 87 (Tex. App.--Houston [14th Dist.] 2006, pet. denied). "Because a court indulges every reasonable presumption to sustain an appraisal award, the burden of proof is on the party seeking to avoid the award." *Id.* Texas courts recognize "three situations in which the results of an otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy." *Id.* Although Amtrust issues section only raises two of these exceptions, its motion argues that all of the exceptions for disregarding an appraisal award apply.

**Was the Award in Compliance with Policy Requirements?**

The Policy states, " If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser." (Dkt. #49, Ex. A). Amtrust complains that Starship and USA's appraiser was not impartial as required by the Policy.

Texas courts have held that "[t]he showing of a pre-existing relationship, without more, does not support a finding of bias." *Franco*, 154 S.W.3d at 786. Texas law requires a certain level of proof to allow an award to be set aside. *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143 (Tex. App.--Houston [1st Dist.] 2002, no pet.). In *Gardner*, the plaintiffs filed a claim with their homeowners' insurer, State Farm, for hail damage to the roof of their home. *Gardner*, 76 S.W.3d at 141. After State Farm denied the claim, the plaintiffs invoked appraisal. *Id.* at 142. State Farm's appraiser "inspected the Gardners' roof, but did not find hail damage exceeding the amount of the policy deductible." *Id.* The Gardners' appraiser disagreed. The dispute was submitted to the umpire, who sided with the State Farm appraiser. The umpire and the State Farm appraiser "signed an appraisal

4

determination which awarded the Gardners no money as a result of the storm." *Id.* After the Gardners sued State Farm "for breach of contract, bad faith, and statutory violation claims," State Farm moved for summary judgment on the ground that "that the Gardners were estopped from pursuing their claims because there had been a valid presuit appraisal determination." *Id.* The trial court "rendered summary judgment for State Farm." *Id.*

On appeal, the Gardners argued that the State Farm appraiser was not "independent" as required under their insurance policy because of a preexisting business relationship between State Farm and a company that employed the State Farm appraiser. As a result, according to the Gardners, the trial court should have disregarded the appraisal award. *Id.* at 143. The Gardners' evidence showed that: (1) the employer of the State Farm appraiser wrote a training program used by State Farm, about hail damage claims; (2) the employer of the State Farm appraiser wrote numerous publications about hailstorm evaluations, and served as a consultant for State Farm on those matters; and (3) the employer of the State Farm appraiser was paid by various State Farm companies for assignments across the United States over seven years. *Id.* The Texas Court of Appeals held that the summary judgment record did not raise "a fact issue about whether [the State Farm appraiser] lacked independence." *Id.* at 144. The court stated that the Gardners:

> presented no evidence that State Farm influenced or exercised control over [their appraiser]. There [was] no evidence that [their appraiser] ever was an employee of State Farm or had a financial interest in the claim. None of their evidence relate[d] to [the appraiser], the Gardners' claim, or the particular hailstorm. Instead, their evidence involve[d] an arm's length business relationship, which [was] unrelated to [their] specific claim, between various State Farm companies and [the appraiser's employer].

*Id.* at 143.

In *Franco*, the plaintiff sought coverage from her insurer, Slavonic Mutual Fire Insurance Association, for the cost of repairing damage caused by a plumbing leak in her home. *Franco*, 154

5

S.W.3d at 780. Slavonic "acknowledged Franco's claim and hired Southland Services, Inc. to inspect the premises at Franco's residence and adjust the claim." *Id.* After adjusting the claim, Slavonic tendered a $3,680.55 check, but Franco refused the payment and invoked appraisal. *Id.* Slavonic appointed Garibay as its appraiser. *Id.* at 781. Before this appointment, Southland had hired Garibay "to examine the premises of the Franco home and determine the cause of the damage, and Garibay [had] issued a report regarding his examination of the Franco residence and his findings." *Id.* Dissatisfied with the appraisal award, Franco sued Slavonic for, among other things, breach of contract. The trial court granted summary judgment against Franco on the breach of contract claim based on Slavonic's paying the appraisal award. *Id.* at 782–83.

On appeal, Franco argued that "the appraisal award should be set aside because Garibay was an interested, prejudiced, and biased appraiser, due to his status as an investigating engineer for Southland and the fact that he already had issued a report containing his opinions regarding the scope of [Franco's] damages and coverage prior to his appointment as appraiser." *Id.* at 785. The Texas Court of Appeals held that the summary judgment evidence did not raise a fact issue as to whether Garibay was biased against Franco. *Id.* at 787. The court explained that "Garibay was not an employee of Slavonic, and Garibay's report and conclusions regarding the cause of the plumbing leak were his own." *Id.* There was "no evidence suggesting that Slavonic influenced or exercised control over Garibay, that Garibay had a financial interest in Franco's claim, or that Garibay's previous inspection of the premises somehow factored into his damages valuation." *Id.*

The Court must now examine the summary judgment record to see if there is a basis to set aside the appraisal award on the ground that Treider was a biased or partial appraiser.

Treider inspected the Property on April 12, 2010, and formed an opinion that portions of the Property had suffered wind damages due to a storm on January 20, 2010. Treider is neither a

licensed public adjuster nor is he a licensed private investigator. Treider provided the insureds specific advice on what type of experts to hire and the qualifications the expert should have. Treider then convinced the insureds to hire his recommended engineer Phelps. Treider serves on The Board of Directors for Phelps' company and has done so since April 2010. Treider recommended to Logsdon that Phelps be retained as a professional engineer to inspect the Property, for purposes of providing testimony to an umpire in an appraisal process.

On or about May 6, 2010, Treider and Phelps inspected the premises on behalf of Starship and USA. Phelps concluded that the roof had been substantially damaged by a tornado that passed nearby and needed to be replaced in its entirety. Phelps issued a report dated June 1, 2010. Treider reviewed the report and made comments to Phelps before Phelps finalized the report. Treider provided the insureds guidance on how to pursue their claim as well as provided language to the insureds on what to say and not to say in correspondence with the company. Treider specifically told the insureds not to refer to him as an expert as that may cause Amtrust to object to him as an appraiser. Amtrust points the Court to Treider's e-mail communications with the insureds and the insureds' counsel before appraisal is even demanded as particularly telling as evidence of Treider's alleged bias and lack of impartiality.

Treider attended Amtrust's reinspection of the Property by Lasater on behalf of the Starship and USA, being careful to introduce himself as "the appraiser for the insured just waiting to get my marching orders for proceeding with the appraisal." Treider admits his conduct at the inspection in October 2010, as well as subsequently at the meeting of the appraisers, was to advocate his "damages position."

Treider provided a repair estimate for the Property, and provided it to Logsdon on the condition that Treider's name not be on it. Treider stated at his deposition, "If I am introduced as

7

an expert, then my involvement in the -- in an umpire appraisal could be objected by the carrier." Treider encouraged Starship and USA to send a letter that Treider believed would put "the insurance carrier in the corner so that they must proceed with a prompt inspection, or they could actually demand appraisal, but this is very unlikely," and later suggested that certain categories of damages, including lost business and expenses, could be used as part of a bad faith claim.

On March 3, 2011, Starship and USA, at Treider's urging, demanded appraisal under the Policy. At no time did Treider disclose to the umpire, or to Butler, Amtrust's appraiser, that he had been counseling Starship and USA with respect to the claims process.

Starship and USA argue that there was no effort to conceal Treider's involvement with the Property owner prior to the appraisal. It is argued that Amtrust was aware of Treider's role as an expert representing Logsdon no later than September 26, 2010. Lasater's report dated November 12, 2010, indicated that Treider was present during Lasater's inspection. Starship and USA argue that despite this knowledge, Amtrust consented to the naming of Treider as an appraiser.

It is without question that Treider had a pre-existing relationship with Starship and USA. However, this fact alone is not sufficient. It is also without question that Treider was utilized as an expert to inspect the Property prior to becoming an appraiser. This fact is also not sufficient. The failure to disclose a prior business relationship, under Texas law, does not help Amtrust's argument. Texas law gives a preclusive effect to the appraisal award. Texas courts require "evidence that the [challenged] appraiser performed 'some act or conduct tending to exhibit his serving the [insurer's] interest as a partisan would.'" *Gardner*, 76 S.W.3d at 144 (quoting *Am. Cent. Ins. Co. v. Terry*, 298 S.W. 658, 662 (Tex. Civ. App.--Texarkana 1927, no writ)).

Amtrust asserts that the evidence shows that Treider was serving the interests of Starship and USA. The Court agrees with Amtrust that, in this case, there is more evidence which raises a fact

8

issue. It appears that Treider was an advocate for Starship and USA. Treider recommended expert witnesses and gave advice to Starship and USA on when to ask for an appraisal under the Policy and how to proceed with the apprisal process. The Court finds that there is a fact issue whether Treider's conduct demonstrates that he was an impartial, unbiased, disinterested appraiser. The Policy requires that Starship and USA appoint an impartial appraiser. Neither party cites the Court to a case that addresses this unique situation where the appraiser was hired prior to being appointed appraiser and seemed to become an advocate for the insured as compared to merely an inspector.

**Was the Award a Result of Fraud, Mistake, or Accident?**

Amtrust asserts that the Appraisal Award should be set aside due to fraud, mistake, or accident because the evidence that the umpire, Neff, was misled into a finding he did not intend, not expressing his true attitude. "A court may set aside an award on the ground of mistake [or accident] only 'upon a showing that the award does not speak the intention of the appraisers.'" *JM Walker,* 356 F. App'x at 746 (quoting *Providence Wash Ins. Co. v. Farmers Elevator Co.*, 141 S.W.2d 1024, 1026 (Tex. Civ. App.--Amarillo 1940, no writ)). The elements of fraud are as follows: (1) a material misrepresentation; (2) that was false; (3) and was either known to be false when made or was asserted without knowledge of its truth; (4) intended to be acted upon; (5) relied upon; (6) and causing injury. *Id.* at 747.

Amtrust asserts that as to fraud, Treider materially misrepresented his role to Neff and to its appraiser, Butler. Amtrust asserts that Treider failed to disclose his services on behalf of Starship and USA, and did so intentionally, to preserve his ability to serve as appraiser and to deceive Neff and Butler to preempt any objections either might offer to his service as appraiser. As to mistake or accident, Amtrust asserts that there is fundamental disagreement between Treider and Neff as to what the Appraisal Award represents. The Court finds that Amtrust has failed to raise a fact issue

9

that the award was the result of fraud, mistake or accident.

**Was the Appraisal Award made without authority?**

Amtrust asserts that the Appraisal Award was made without authority because Treider was not qualified to serve as an appraiser for Starship and USA because, by the terms of the Policy, Starship and USA were required to select an impartial, unbiased appraiser.

"Under Texas law, appraisers exceed their authority when they decide coverage and liability questions, but do not necessarily exceed their authority every time causation factors into their award." *MLCSV10 v. Stateside Enterprises, Inc.*, 866 F. Supp.2d 691, 703 (S.D. Tex. 2012). Amtrust does not make this sort of challenge and fails to cite the Court to any case that asserts that the impartiality question is part of this exception.

## Conclusion

The Court finds that Amtrust's motion should be denied. Amtrust has failed to raise a fact issue on two of the three exceptions. However, Amtrust has raised a fact issue on whether or not there was compliance with the Policy with respect to the impartiality of an appraiser. Amtrust has offered sufficient facts to create a fact issue which requires the Court to conduct a trial on this one limited issue.

It is therefore ORDERED that Plaintiff's Motion to Set Aside Appraisal Award (Dkt. #49) is hereby DENIED. However, Plaintiff has raised a fact issue entitling it to a trial to decide the issue.

**SIGNED this 25th day of March, 2013.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE